IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ELEANOR T. GARCIA (#46546-180), | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-06-0011 |
| | § | |
| WARDEN JOYCE FRANCIS, | § | |
| | § | |
| Respondent. | § | |

**MEMORANDUM AND ORDER**

Federal prisoner Eleanor T. Garcia (#46546-019) has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, arguing that the United States Bureau of Prisons (the "BOP") has wrongfully denied her the right to serve the latter part of her sentence of imprisonment in a community confinement center or in home confinement. After reviewing all of the pleadings, and the applicable law, the Court **denies** the petition and **dismisses** this case for reasons that follow.

**I.   BACKGROUND**

Garcia reports that she was recently sentenced to serve twenty-four months in prison on September 9, 2005, as the result of a conviction entered against her in the United States District Court for the Western District of Texas for importation of marijuana. Garcia does not challenge her underlying conviction here. Instead, Garcia contends that she is entitled to federal habeas corpus relief under 28 U.S.C. § 2241 because the BOP implemented a policy in December of 2002, that was recently revised in February of 2005, which limits the amount of time that criminal defendants sentenced to imprisonment may spend in a

community confinement center ("CCC"), sometimes referred to as a halfway house, prior to their release from custody. She insists that this new procedure differs from the BOP's previous "long-standing policy of placing prisoner's [sic] on Home Confinement pursuant to 18 U.S.C. § 3624(c)."

The change in policy, which is based on the BOP's interpretation of the federal statutes concerning placement of offenders in pre-release confinement facilities, is set forth in greater detail below. Garcia insists that she does not challenge the validity of the policy. She contends that any application of the revised February 2005 policy to her sentence violates the Ex Post Facto Clause of the United States Constitution. Garcia contends further that application of this policy violates her rights to due process and equal protection. Garcia concedes that she has not attempted to exhaust available administrative remedies by presenting her claims to the BOP.[1] Assuming without deciding that exhaustion would be futile in this instance, the Court concludes that the claims raised in the petition are without merit and that Garcia is not entitled to federal habeas corpus relief for reasons that follow.

---

[1] The Fifth Circuit has determined that a federal prisoner seeking relief under 28 U.S.C. § 2241 "must first exhaust [her] administrative remedies through the Bureau of Prisons." *Rourke v. Thompson*, 11 F.3d 47, 49 (5th Cir. 1993) (citing *United States v. Gabor*, 905 F.2d 76, 78 n.2 (5th Cir. 1990) (citations omitted); *Lundy v. Osborn*, 555 F.2d 534, 534-35 (5th Cir. 1977) ("[G]rievances of prisoners concerning prison administration should be presented to the Bureau [of Prisons] through the available administrative channels. Only after such remedies are exhausted will the court entertain the application for relief in an appropriate case.") (citations omitted)).

**II.      STANDARD OF REVIEW**

A petition for a writ of habeas corpus under 28 U.S.C. § 2241 is correctly used to challenge the manner in which a sentence is executed. *See Reyes-Requena v. United States*, 243 F.3d 893, 900-01 (5th Cir. 2001). A § 2241 petition that attacks the manner in which a sentence is carried out or a determination affecting the length of its duration "must be filed in the same district where the prisoner is incarcerated." *Pack v. Yusuff*, 218 F.3d 448, 451 (5th Cir. 2000) (citations omitted). Because the petitioner is in custody at the nearby Federal Prison Camp in Bryan, Texas, this Court has jurisdiction over her petition.

To prevail, a habeas corpus petitioner must show that she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A *pro se* pleading is held to less stringent standards than more formal pleadings drafted by lawyers. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Nevertheless, a federal district court may dismiss a habeas corpus proceeding if it appears from the face of the petition that the petitioner is not entitled to relief. *See Lonchar v. Thomas*, 517 U.S. 314, 320 (1996) (discussing summary dismissal under Rule 4 of the Rules Governing Section 2254 Cases); *see also* 28 U.S.C. § 2243.

**III.     THE PRISON POLICY IN DISPUTE**

The policy in dispute concerns a shift in the BOP's interpretation of its statutory authority to designate or assign inmates to CCC facilities pursuant to 18 U.S.C. §§ 3621 and 3624. In pertinent part, 18 U.S.C. § 3621 establishes the BOP's authority to designate a federal prisoner's place of imprisonment once sentence has been imposed:

> The [BOP] shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau . . . . The Bureau may at any time . . . direct the transfer of a prisoner from one penal or correctional facility to another.

18 U.S.C. § 3621(b). After a prisoner has been incarcerated, 18 U.S.C. § 3624 governs the BOP's discretion to designate facilities for pre-release confinement towards the end of a sentence of imprisonment:

> The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months of, the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement. The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during such pre-release custody.

18 U.S.C. § 3624(c). The petitioner in this case, who has been in federal prison from the commencement of her sentence, seeks assignment to a CCC or to home confinement toward the end of her term of imprisonment for no less than six months.

Until December 2002, the BOP apparently construed 18 U.S.C. § 3624(c) as granting it unlimited authority to evaluate inmates for placement in community confinement (including CCCs and home confinement) for the last six months of a term of incarceration. However, in December of 2002, the Department of Justice Office of Legal Counsel ("OLC") issued a formal memorandum opinion concerning the BOP's practice of placing certain offenders, who have received a sentence of imprisonment, in a CCC. After reviewing the relevant Sentencing Guidelines, case law, and statutory authority, the OLC memorandum concluded that the BOP's current practice of placing these offenders in a CCC directly at the

4

outset of a sentence of imprisonment, or to transfer the prisoner to community confinement during the course of her sentence, was "unlawful" because confinement in a CCC did not constitute "imprisonment" within the meaning of 18 U.S.C. § 3621(b). *See Goldings v. Winn*, 383 F.3d 17, 19-20 (1st Cir. 2004) (discussing the contents of the December 2002 OLC Memorandum). The OLC memorandum concluded further that 18 U.S.C. § 3624(c), which does provide the BOP the authority to send prisoners to CCCs toward the end of a sentence, sets an upper limit on the amount of time that a prisoner can serve in that type of facility at ten percent of his or her sentence, but no more than six months. *See id.* In compliance with the OLC memorandum, the BOP revised its prior policy of sending prisoners to a CCC for the final six months of their sentences, and began to limit designations of prisoners to community confinement for no more than ten percent of their sentences.

In 2004, two circuit courts of appeal struck down the December 2002 policy because its interpretation of the limit imposed by § 3624(c) failed to consider that § 3621(b) gave the BOP discretion to transfer prisoners, if appropriate, at any time. *See Goldings v. Winn*, 383 F.3d 17, 23-24 (1st Cir. 2004) (holding that § 3624(c) does not prohibit the BOP from transferring prisoners to a CCC before the last ten percent of their prison terms, and that § 3621(b) confers the discretionary authority upon the BOP to execute such transfers at any time); *Elwood v. Jeter*, 386 F.3d 842, 846-47 (8th Cir. 2004) (holding essentially the same). In response, the BOP proposed and adopted a new policy on CCC placement that went into effect on February 14, 2005. *See Community Confinement*, 69 Fed. Reg. 51213 (Aug. 18,

5

2004) (proposed rule); *Community Confinement*, 70 Fed. Reg. 1659 (Jan. 10, 2005) (codified at 28 C.F.R. § 570.21); *see also Yip v. Federal Bureau of Prisons*, 363 F. Supp. 2d 548, 550 (E.D.N.Y. 2005) (setting forth the policy in full). As with the December 2002 policy, the February 2005 policy allows the BOP to limit CCC assignments to the last ten percent of the sentence. The February 2005 policy clarifies the BOP's interpretation that it has the right to exercise its discretion categorically to limit inmates' community confinement to the last ten percent of the prison sentence being served, not to exceed six months, and that such an exercise of discretion is consistent with 18 U.S.C. § 3621(b). *See Community Confinement*, 70 Fed. Reg. at 1661.

## IV.   DISCUSSION

### A.   Due Process

The petitioner asserts that she has a right under 18 U.S.C. § 3624(c) to spend the last six months of her term of imprisonment in a CCC or in home confinement. She argues that, by postponing her transfer to a more favorable penal facility, the February 2005 policy deprives her of a right protected by the Due Process Clause. The petitioner is incorrect.

The Due Process Clause found in the Fifth and Fourteenth Amendments to the United States Constitution generally prohibits any governmental action that interferes with life, liberty, or property without due process of law. In addition to its procedural guarantees, the Due Process Clause includes a substantive component, which prohibits government interference with certain "fundamental" liberty interests. *See Reno v. Flores*, 507 U.S. 292, 301-02 (1993). It is well established, however, that a prisoner does not have a

constitutionally protected liberty interest in his or her place of incarceration. *See Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983); *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976). Likewise, there is no right to placement in any particular pre-release program. *See Prows v. Federal Bureau of Prisons*, 981 F.2d 466, 469 (10th Cir. 1992); *see also Galati v. Federal Bureau of Prisons*, No. Civ. A. 05-3241, 2005 WL 2129645, *5 (D.N.J. Aug. 31, 2005) ("Petitioner is not entitled under § 3624(c) to serve the last six months of his term of imprisonment in a CCC or home confinement"). Because the petitioner's allegations do not implicate a protected interest, she fails to state a valid claim under the Due Process Clause.

**B.     Equal Protection**

The petitioner argues that, by postponing her transfer to a CCC or to home confinement, the February 2005 policy deprives her of the right to equal protection. The Fifth Amendment imposes on the federal government the same standard required of state legislation by the Equal Protection Clause of the Fourteenth Amendment. *See, e.g. Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 216-18 (1995) (observing that the same test is used to evaluate alleged equal protection violations under the Fifth Amendment as under the Fourteenth Amendment). The Equal Protection Clause essentially mandates that all persons similarly situated be treated alike. *See City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). To state an equal protection claim the petitioner must allege that similarly situated individuals were treated differently. *See Johnson v. Rodriguez*, 110 F.3d 299, 306-07 (5th Cir.), *cert. denied*, 522 U.S. 995 (1997).

In support of her claim, the petitioner cites an instance in which another prisoner served the final eighteen months of her prison sentence in a CCC followed by six months in home confinement. The petitioner provides only conclusory generalizations, however, and she does not allege facts showing that she is similarly situated to this other inmate. Thus, the petitioner does not demonstrate that she has been treated differently under the policy than other, similarly situated prisoners for purposes of establishing an equal protection claim.

**C.     Ex Post Facto**

The petitioner argues that the retroactive application of the February 2005 policy to her sentence violates the prohibition against ex post facto laws found in the United States Constitution because delaying her release to a CCC or home confinement constitutes a "disadvantage." This claim is without merit.

The federal constitution does not expressly prohibit the enactment of all retroactive laws. *See* Norman J. Singer, *Statutes and Statutory Construction* § 41.3 at 382-83 (6th ed. 2001). Statutes which retroactively impose criminal liability or increase the severity of its impact with reference to behavior that occurred prior to its enactment, known as ex post facto laws, are prohibited by specific provisions of the constitution. *See id*. at 383. Article I, Section 9 of the United States Constitution provides that "[n]o . . . ex post facto Law shall be passed." U.S. CONST. art. I, § 9, cl. 3. "Not every retroactive procedural change creating a risk of affecting an inmate's term or conditions of confinement is prohibited." *Garner v. Jones*, 529 U.S. 244, 250 (2000). The Supreme Court has clarified that "the focus of the ex post facto inquiry is not on whether a legislative change produces some ambiguous sort of

'disadvantage,' nor . . . on whether an amendment affects a prisoner's 'opportunity to take advantage of provisions for early release,' . . . but on whether any such change alters the definition of criminal conduct or increases the penalty by which a crime is punishable." *California Dep't of Corr. v. Morales*, 514 U.S. 499, 506 n.3 (1995) (citation omitted); *Wottlin v. Fleming*, 136 F.3d 1032, 1037 (5th Cir. 1998) (quoting *Morales*).

The practical effect of the February 2005 policy is identical to the December 2002 policy that was previously in place because both limit the BOP's discretion to designate prisoners to pre-release confinement (including CCCs and home confinement) to the lesser of six months or the last ten percent of their sentences. Accepting as true that there was a change in policy that disfavors the petitioner by postponing her consideration for pre-release custodial placement, such a change does not violate the Ex Post Facto Clause. The February 2005 policy does not retroactively cancel credits toward early release that the petitioner already has earned or remove an opportunity for early release for which the petitioner already has been found eligible. *See, e.g. Lynce v. Mathis*, 519 U.S. 433 (1997) (invalidating a state statute as an ex post facto law where the enactment retroactively revoked "gain time credits" previously earned by a prisoner who had been released on parole, such that he was returned to prison). A reading of the policy reflects that it was not intended to increase the punishment previously imposed. The policy was intended to guide the BOP's broad discretion afforded under the statute governing placement of prisoners, 18 U.S.C. § 3621(b), consistent with Congressional objectives and policy determinations of the United States Sentencing Commission so as to eliminate unwarranted disparities and to preserve facility

9

resources. *See Community Confinement*, 69 Fed. Reg. at 51213-51214. Thus, the February 2005 policy's application to the petitioner poses no ex post facto violation because there has been no change to the applicable statutes and no increase to the punishment imposed. *See Morales*, 514 U.S. at 506 n.3.[2]

The petitioner argues further that the retroactive application of the February 2005 policy to her sentence is improper under *Bowen v. Georgetown University Hospital*, 488 U.S. 204 (1998). As noted above, the retroactivity of penal legislation is regulated by specific provisions of the United States Constitution found in the Ex Post Facto Clause. *See* Singer, *Statutes and Statutory Construction* § 41.3 at 383. The petitioner cites no authority showing that the Supreme Court's decision in *Bowen*, which applied general retroactivity principles to the application of a civil administrative rule regarding reimbursement of costs under the Medicare program, prohibits a penal administrative rule that would otherwise pass muster under the Ex Post Facto Clause. Absent the violation of a specific constitutional provision,

---

[2] Other courts that have considered the February 2005 policy have also found that it does not violate the Ex Post Facto Clause. *See Moss v. Apker*, 376 F. Supp. 2d 416, 425 (S.D.N.Y. 2005); *see also Montoya v. Rios*, No. 05-CV-00606, 2005 WL 3203813, *3 n.3 (D. Colo. Oct. 26, 2005) (finding that the February 2005 policy does not violate the Ex Post Facto Clause because the regulation is a "mere change in the 'legal regime' under which Petitioner is serving his sentence rather than an increase in punishment for [the] offense"); *Balderas v. Francis*, Civ. No. H-05-3367 (S.D. Tex. Oct. 20, 2005) (noting that the changed policy "does not amount to an increase in punishment and therefore does not implicate the [E]x [P]ost [F]acto clause"); *Charboneau v. Menifee*, No. 05 Civ. 2698, 2005 WL 2385862, *6 (S.D.N.Y. Sept. 28, 2005) (observing that the rule change "does not amount to an increased penalty because it does not have the purpose or effect of enhancing the penalty associated with Petitioner's crime") (quoting *Levine v. Menifee*, 05 Civ. 1902, 2005 WL 1384021, *7 (S.D.N.Y. June 9, 2005)).

the Court is not persuaded that a retroactive application of the policy is prohibited by the holding in *Bowen.*

Even if the rule in *Bowen* were applicable, the petitioner still fails to show that she is entitled to relief under that decision. In *Bowen*, the Supreme Court noted that agency rules typically will not apply retroactively in the absence of express statutory authorization. *See* 488 U.S. at 208. The Court would later clarify that a law does not operate retroactively merely because it is applied in a case arising from conduct antedating the enactment. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 269 (1994). Under this enquiry, a rule is retroactive if it takes away or impairs "vested rights acquired under existing laws," or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past. *Id*. (quotation omitted).

The petitioner in this case has not yet reached the final ten percent of her sentence, making her eligible for consideration by the BOP for transfer to a CCC or home confinement. As a matter of law, decisions regarding a prisoner's designation by the BOP are made in an exercise of the agency's discretion. *See United States v. Sneed*, 63 F.3d 381, 389 n.6 (5th Cir. 1995) (declining to consider a defendant's request for home confinement "because such requests are properly directed to the Bureau of Prisons") (citing 18 U.S.C. § 3624(c), which provides that the Bureau of Prisons has authority to "place a prisoner in home confinement"); *Prows v. Federal Bureau of Prisons*, 981 F.2d 466, 469 (10th Cir. 1992) ("Nothing in § 3624(c) indicates any intention to encroach upon the Bureau's authority to decide where the prisoner may be confined during the pre-release period."), *cert. denied*,

11

510 U.S. 830 (1993). Neither the Constitution nor the statutes or administrative policies at issue create an absolute right to the transfer that the petitioner seeks. *See Olim*, 461 U.S. at 245-46; *Meachum*, 427 U.S. at 224-25; *Prows*, 981 F.2d at 469. Under these circumstances, the petitioner fails to allege or show that any change in policy infringed a vested or protected right or that an application of the February 2005 regulations otherwise violates the Ex Post Facto Clause.[3] Absent a showing that the February 2005 policy has violated her constitutional rights, the petitioner fails to state a valid claim for federal habeas corpus relief.

## V. CONCLUSION AND ORDER

For all of the foregoing reasons, the petitioner is not entitled to federal habeas corpus relief under 28 U.S.C. § 2241. Accordingly, the Court **ORDERS** as follows:

1.  The petition for a federal writ of habeas corpus (Docket Entry No. 1) is **DENIED**.

2.  The petitioner's pending motions for class certification and for appointment of counsel (Docket Entry Nos. 2 and 3) are **DENIED**.

---

[3] In making her argument that *Bowen* invalidates a retroactive application of the February 2005 policy, the petitioner suggests that the policy should not apply to her because it was adopted in violation of the notice-and-comment requirement found in the Administrative Procedures Act (the "APA"). This assertion is without merit, as the February 2005 policy was published in the Federal Register with a period of notice and comment. *See Community Confinement*, 69 Fed. Reg. 51213 (Aug. 18, 2004) (proposed rule); *Community Confinement*, 70 Fed. Reg. 1659 (Jan. 10, 2005). Other courts addressing this issue have also found that the new regulations promulgated under the February 2005 policy were published in compliance with the APA. *See Moss v. Apker*, 376 F. Supp. 2d 416, 422 (S.D.N.Y. 2005); *Wiesel v. Menifee*, No. Civ. 9681, 2005 WL 1036297, *6 (S.D.N.Y. May 2, 2005); *DeFrancesco v. Federal Bureau of Prisons*, No. Civ. A. 05-1780, 2005 WL 1712020, *5 (D.N.J. July 20, 2005); *Jackson v. Federal Bureau of Prisons*, No. Civ. A. 05-2339, 2005 WL 1705775, *5 (D.N.J. July 20, 2005).

3. This case is **DISMISSED** with prejudice.

The Clerk will provide a copy of this order to the parties.

SIGNED at Houston, Texas on **January 17, 2006.**

_____
Nancy F. Atlas
United States District Judge